Sneed, J.,
delivered the opinion of the Court.
The defendant, as Sheriff of Sumner county, levied an execution upon' five head of sheep as the property of the plaintiff, the execution debtor. The plaintiff brought his action of replevin, and claims the property under the exemption laws. The case is before us by appeal in error from the judgment of the Circuit Court of Sumner county upon an agreed state of facts without the intervention of a jury. The case agreed is as follows: “The plaintiff lives within the corporate limits of the town of Gallatin. ’ He. owns in said town a lot of ground of one acre, upon which he lives. He cultivates a garden upon said iot, in which he produces the usual vegetables raised in a garden, including cabbages, potatoes, and “roasting ears” of corn. He is the head of a family; has a wife and eight children. He has lived in said town six years, and since his said residence has been engaged in the business of butchering, working as a day laborer, and cultivating his garden for the support of his family. He bought the five head of sheep on the day they were levied on, .to butcher them. The sheep were worth eight dollars. The defendant is Sheriff of the county. That ‘ agriculture ’ was proven *514 to mean, in its strict sense, raising cereals and stock; and horticulture, vegetables. That the definition given by Webster, in his Unabridged Dictionary of ‘agriculture’ taken altogether, is correct. The plaintiff raised some grass in his garden with which to feed his cow, and the portion this year in grass would not yield one hundred pounds of hay.”
Upon this state of facts, the Circuit Court adjudged the plaintiff to be a butcher by trade, and not an agriculturist in the sense of the exemption laws.
The exemption laws of this State were intended as a protection to honest poverty, — to secure to the indigent citizen a frugal maintenance for his family. They have been construed by the courts with uniform liberality, and in some cases, perhaps, with more liberality than justice. They were never intended as a covert behind which a cunning operator could enrich himself by traffic, and still defy ,his just creditors. The provisions of these laws are simple and easy of comprehension. The abuse .and perversion of them can not be tolerated by judicial construction.
“ I have always,” said the Master of the Rolls in Middlecome v. Marlow, “ a great compassion for wife and children; yet, on the other side, it is probable that if creditors should not have their debts, their wives and children may be reduced to want.” 2 Atk., 519. And it often happens, indeed, as was complained in that case, that the natural compassion for the poor, which is too apt to warp judicial construction, falls more heavily upon the indigent creditor than the loss of the amount involved would upon the favored debtor. *515 "We are not disposed to carry the construction of these laws beyond the very liberal verge to which, it has already been brought. The exemptions of property from execution or attachment in the hands of heads of families are of two classes. The one refers to the head of the family without reference to his avocation, and in his hands are exempt many articles of personal property by the second section of the Act of 1871, c. 71, into which all the laws upon this subject have recently been embodied. Vide Shank. Supp., 119. This embraces the exemption of two horses, a wagon, cows, divers articles of household and kitchen furniture, food for stock, fuel, provisions, and many other articles, aggregating a comfortable maintenance from year to year. . The third section exempts certain other property in the hands of heads of families engaged in agriculture. Among these are certain implements of husbandry and “five head of sheep and ten head of stock hogs.” The language is, “if the head -of the family be engaged in agriculture there shall be further exempt in his hands the following property.”
The facts argued, in this case show a person engaged in agriculture to be one engaged in raising cereals and stock; and it is admitted that the 'definition of our standard lexicographer “taken altogether, is correct.” According to this authority, agriculture is in its general sense the cultivation of the ground for the purpose of procuring vegetables and fruits for the use of man and beast; or the act of preparing the soil, sowing and planting seeds, dressing the plants, and removing the crops. In this sense the word includes *516 gardening or horticulture, and also the raising and feeding of cattle or stock. But in a more common and appropriate sense it is used to signify that species of cultivation which is intended to raise grain and other field crops for man and beast. It is equivalent to husbandry, and husbandry, Webster defines to be the business of a farmer, comprehending agriculture or tillage of the ground, the raising, managing, and fattening of cattle and other domestic animals, the management of the dairy and whatever the land produces. Webst. Ed., 1856. This great work is pronounced by the Courts of both England and America to be the standard vocabulary of the English language; but the word “agriculture,” as used in these exemption laws, has its peculiar legal sense, and relates to the vocation. It is true that two or more vocations may be combined, but we are not accustomed to think of an artizan, a merchant, or a lawyer, who, living within a crowded town or city and following his avocation, happens to cultivate a little patch of earth in vegetables for his table, as an agriculturist, even in its most general sense. If he produced, them on any extended scale for market, or “for man and beast” in the sense of husbandry, then he might be regarded as an agriculturist in the sense of the law. The use of the words “ten head of stock hogs” in the same connection with “five head of sheep,” is significant. They import the breeding of stock, and not the occasional purchase for speculation in the market.
The exemption is first to any head of a family; then further exemption to him who is a mechanic and *517 to him who is an agriculturist. The law first looks to the fact that the citizen is the head of a family, and as such a liberal provision is made for him. It then looks to his trade, his vocation and business, and adds other articles of peculiar value to that particular business or trade. The plaintiff is by trade a butcher. He bought the five head of sheep levied on, not to stock a farm, but to butcher on the next day for market. This it was perhaps his daily custom to do. By buying and shipping five head of sheep at a time, he might in a little while .fill an order for five hundred sheep in Baltimore, or a like number in Hew Orleans, and thus, under the construction of these laws -claimed in his behalf, he might very shortly grow rich and his creditors grow poor by being kept out of their just demands.
The plaintiff is not engaged in agriculture in the sense of the exemption laws.
The judgment will be affirmed.